Filed 12/12/24  P. v. Cota CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CECILIA COTA, Defendant and Appellant. | D082488 (Super. Ct. No. JCF003623) |

APPEAL from an order of the Superior Court of Imperial County, Eran Marie Bermudez, Judge.  Affirmed.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

While representing the buyer and seller in a real estate transaction, Cecilia Cota inflated a property's purchase price by $20,000 and diverted that

money to herself. After pleading no contest to acting as a real estate agent without a license, the trial court ordered Cota to pay $20,000 in restitution to the buyer. Cota appeals the restitution order, arguing the record is insufficient to allow meaningful appellate review. She alternatively asserts the restitution order is unsupported. We disagree with both claims and affirm.

## II. BACKGROUND[1]

In 2018, Cota represented Miguel Casarez as the seller, and Beatriz Rosales as the buyer, of two vacant lots in Imperial County (Property). Cota was not a licensed real estate agent. Casarez told Cota he wanted $75,000 for the Property, but she informed him that price was too high. After about a month Cota told Casarez that she found a buyer for $55,000. Casarez agreed to that amount because he needed the money and Cota said the buyer would not pay more for the vacant lots. Casarez also agreed to a $1,200 commission for Cota, which would come out of the purchase price.

Cota told Rosales, however, the price of the Property was $75,000, with a $10,000 discount if payment were made in cash. Cota also directed Rosales to send $20,000 of the purchase price to a separate account because Casarez did not want to pay taxes on that amount.

Initial escrow instructions reflected the property price as $55,000. However, an amendment signed by both buyer and seller showed a price increase to $75,000. Casarez did not remember signing anything with the $75,000 figure. He recalled Cota had him sign all the documents quickly without a chance to read them. Cota also pressured Rosales to sign the

---

[1] The factual summary in this section is from the preliminary hearing that occurred on November 30 and December 1, 2021. The evidence at that hearing is the factual basis for Cota's no contest plea.

transfer documents, which she did even though there was no mention of the $10,000 cash refund.

Believing escrow would send her a $10,000 refund at closing, and that the diversion of $20,000 seemed strange, Rosales deposited the entire $75,000 purchase price, in cash, into escrow.[2]  Pursuant to escrow instructions, the sale proceeds were disbursed in three checks.  Two for $10,000 each and one for the remainder.  Casarez received a check for $53,760.99 from Cota and deposited it into his account.  At the time, he believed that was the full amount to which he was entitled.  The other two checks totaling $20,000 were deposited into an account belonging to Cota.  Cota spent some of that money on personal items and transferred $5,000 of it to her son.  Rosales asked Cota for her $10,000 refund but never got it.

After his brother reviewed the transaction and determined Casarez should have received more money, Casarez complained to Chicago Title, the title company involved in the transaction.  Chicago Title eventually disbursed an additional $20,000 to Casarez.[3]

In 2022, the Office of the Imperial County District Attorney charged Cota with two felony counts of grand theft (Pen. Code,[4] § 487, subd. (a)), and one misdemeanor count of acting as a real estate agent without a license (Bus. & Prof. Code, § 10139).  She pleaded no contest to the misdemeanor in exchange for dismissal of the felonies, agreeing the facts of the dismissed counts could be considered for purposes of restitution.  The trial court placed

---

[2]    According to her preliminary hearing testimony, Rosales deposited $75,600 into escrow.  The record is unrevealing on, and the parties do not address, this extra $600.  Under these circumstances we do not address it.

[3]    The source of those funds is unknown.

[4]    All further unspecified statutory references are to the Penal Code.

Cota on one year summary probation and imposed a $2,640 fine that could be satisfied with 120 hours of community work service.

On May 25, 2023, the court held a restitution hearing. The only evidence at the hearing was a memorandum from the Imperial County Probation Department, Cota's declaration, and the preliminary hearing transcripts.[5] The probation department's memorandum stated that Cota diverted $20,000 to herself by increasing the purchase price of the Property, and Rosales continues to make payments on the $75,000 loan she incurred to obtain the Property. Pursuant to Rosales's request, the probation department recommended restitution to Rosales in the amount of $20,000, plus 10 percent annual interest from the date of the transaction.

Cota's declaration stated that Casarez wanted $55,000 for the Property and authorized Cota to keep any excess; Rosales agreed to the $75,000 price; Cota never agreed to any refund for Rosales; Casarez was happy with the transaction; the title company took $20,000 from Cota's bank account and returned it to Casarez; and Rosales is currently selling the Property for $405,000.

Consistent with the probation department's recommendation, the trial court ordered Cota to pay $20,000 in restitution, plus 10 percent annual interest from the date of the loss. Though the court did not use a court reporter for the hearing, or electronically record the proceedings, the minutes

---

[5] The trial court's minutes from the restitution hearing reference "transcripts dated 12/06/2023." As Cota acknowledges, that date is a typographical error because it was six months past the restitution hearing date. We conclude the trial court was referring to the preliminary hearing transcripts from this case because they provided the factual basis for Cota's plea, and they both contain a file stamp of "Dec 06 2021." Neither party disputes this.

4

reflect the trial court stated its findings for the record after the parties argued the matter. Cota timely appealed from the restitution order.

While the current appeal was pending, Cota filed a motion in the trial court to vacate the restitution order. She argued the record of the restitution hearing did not permit meaningful appellate review because the hearing was not reported, her trial counsel recently died precluding the preparation of a settled statement, and the exhibits from the preliminary hearing had been destroyed. The People opposed the motion and attempted to assist with the settled statement by providing Cota's appellate counsel with notes from the prosecutor who appeared at the restitution hearing. Those notes stated the trial court found that Rosales suffered an ascertainable loss because if Cota had not illegally inflated the Property's price, Rosales would have only obtained a loan for $55,000.

On March 3, 2024, the trial court denied Cota's motion to vacate. It found the request premature because Cota did not present evidence that a settled statement could not be produced by the parties. The trial court also observed that Cota was present at the restitution hearing, the People offered their notes of that hearing, and there was no evidence describing the efforts to reach a settled statement.

## III. DISCUSSION

Cota raises two issues on appeal. First, she claims the record from the restitution hearing makes adequate appellate review impossible, warranting a new restitution hearing.[6] In the alternative, Cota argues that based on the

---

[6] Cota also filed a motion seeking to vacate the restitution order on this ground, which we ordered to be considered with this appeal. We deny that motion for the same reasons we affirm the trial court's order.

existing record, there is insufficient evidence to support the restitution award.

## A. *Sufficiency of the Record*

Cota argues that without a reporter's transcript, the trial court's restitution hearing minute order does not allow meaningful review. Cota claims the trial court's findings and reasoning are unclear, and a settled statement is not available due to her trial counsel's death and the preliminary hearing exhibits' destruction. Cota therefore asks that we vacate the restitution order and direct the trial court to conduct a new hearing pursuant to section 1181, subdivision (9).

A criminal defendant is entitled to "an appellate record that is adequate to permit meaningful review." (*People v. Young* (2005) 34 Cal.4th 1149, 1170.) "No presumption of prejudice arises from the absence of materials from the appellate record [citation], and defendant bears the burden of demonstrating" the record's inadequacy. (*People v. Samayoa* (1997) 15 Cal.4th 795, 820.) Speculation and "[i]nconsequential inaccuracies or omissions are insufficient" to meet this burden. (*Young*, at p. 1170.) Rather, the defendant must show that the alleged deficiencies prevent us from reaching the merits of the defendant's claims. (*Ibid*.)

Additionally, pursuant to section 1181, subdivision (9), a trial or reviewing court may set aside an appealed order "when it is not possible to have a phonographic report of the trial transcribed by a stenographic reporter as provided by law or by rule *because of* the death or disability of a reporter who participated as a stenographic reporter at the trial or *because of* the loss or destruction, in whole or in substantial part, of the notes of such reporter." (§ 1181, subd. (9), italics added.) Here, we do not have a transcript of the restitution hearing because the matter was not reported or recorded. The

transcript's absence is not attributable to the death or disability of a reporter, or the loss or destruction of a reporter's notes. Accordingly, section 1181, subdivision (9), does not apply.

As for our ability to meaningfully review the record, no live testimony was presented at the restitution hearing. The evidence was limited to the probation department's memorandum, Cota's declaration, and preliminary hearing transcripts. This evidence is in the record. Although the exhibits from the preliminary hearing were ordered destroyed on July 15, 2022, that occurred almost one year before the restitution hearing, demonstrating that the trial court did not review those exhibits when ordering restitution. Accordingly, we can review all the evidence upon which the trial court made its disputed order.

The only matters missing from the record are trial counsels' argument and the court's stated findings. But we can adequately review Cota's claim of insufficient evidence without knowing the precise arguments made by counsel. As discussed below, review of that claim is limited to whether there was a factual and rational basis for the order. Regarding the court's findings, while not expressly stated, they can easily be inferred. By ordering $20,000 plus interest in restitution, the court adopted the probation department's recommendation and accepted Rosales's version of events over Cota's.

In sum, resolution of Cota's challenge to the restitution order does not depend on a verbatim transcription of the hearing. We can adequately review her claim of insufficient evidence based on the existing record; therefore, we decline to vacate the restitution order on this ground.

B.    *Sufficiency of the Evidence*

Cota argues the evidence at the restitution hearing does not show that Rosales suffered any legally compensable economic loss. Cota claims Rosales

7

received title to the Property by paying the quoted price, and Casarez's willingness to accept a lower price does not change the terms of the escrow instructions. Cota also asserts that because she represented both the buyer and seller, she was not obligated to disclose the lowest price Casarez would accept, or the highest price Rosales would pay. Finally, Cota contends that Rosales confused the terms of the sale and suffered nothing more than buyer's remorse.

"[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim." (§ 1202.4, subd. (f).) " '[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole. [Citations.]' [Citations.] 'There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26–27.)

We review restitution orders for abuse of discretion. (*People v. Pittman* (2024) 99 Cal.App.5th 1252, 1258.) No abuse occurs when the order is supported by a factual and rational basis. (*Ibid*.) " ' "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference

8

drawn by the trier of fact.' " (*People v. Millard, supra,* 175 Cal.App.4th at p. 26.)

Here, Rosales's preliminary hearing testimony and the probation department's memorandum show that Casarez thought he was selling the Property for $55,000, Cota increased the price to $75,000, Rosales paid that price by obtaining a $75,000 loan, and Cota took the extra $20,000 for herself without telling Casarez or Rosales despite representing each of them. In ordering restitution, the trial court necessarily discredited the contrary claims in Cota's declaration, and we do not reweigh that determination here.

Under these circumstances, there was a rational and factual basis to determine that Cota criminally overstated the purchase price, causing Rosales to unnecessarily incur an extra $20,000 in debt. Cota also understated the selling price to reduce the proceeds received by Casarez. The trial court order reflects a desire for each side of the transaction to receive the benefit of the bargain it thought it would receive but for appellant's lack of candor. Since Chicago Title through its escrow duties already returned $20,000 to Casarez, his side of the deal concluded for the price Rosales paid. What remained for the court was to make Rosales financially whole by refunding to her the amount over what Casarez would have accepted had Cota not misled Rosales. The trial court's order achieves that legally justifiable result. Further, the law authorized the trial court to order 10 percent annual interest from the date of the loss. (§ 1202.4, subd. (f)(3)(G).)

We conclude a factual and rational basis supports that Rosales suffered a $20,000 economic loss because of Cota's criminal conduct. We therefore affirm the restitution order.

## IV. DISPOSITION

The order is affirmed.

RUBIN, J.

WE CONCUR:


DO, Acting P. J.


KELETY, J.